COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

RIGOBERTO AGUIRRE,                                     )

                                                                              )               No.  08-00-00456-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
384th District Court

THE STATE OF TEXAS,                                     )

                                                                              )          
of El Paso County, Texas

Appellee.                           )

                                                                              )                
(TC# 980D06209)

                                                                              )

 

 

O P I N I O N

 

Appellant, Rigoberto Aguirre, was charged with the first-degree felony
offense of delivery of a controlled substance, cocaine, in the amount of four
or more but less than 200 grams.  He was
found guilty by a jury, and sentenced by the trial court.  The court assessed punishment at 10 years= confinement, probated for 10 years,
and a fine of $5,000, half of which was probated.  Appellant now brings this appeal, raising
three issues for our review.  We will
affirm the conviction.  

UNDERLYING
FACTS








In March 1998,
Detective Mario Garcia was assigned to the Metro Narcotics Task Force of the El
Paso County Sheriff=s
Office.  As part of his duties, Detective
Garcia participated in an undercover investigation involving Appellant.  On March 13, 1998, Detective Garcia was
introduced to Appellant by a confidential informant, Jose Escobedo
Hernandez.  The introduction took place
at the Potrero Bar in El Paso, Texas.  Shortly after arriving at the bar, Mr.
Hernandez met with Appellant. 
Afterwards, Detective Garcia was introduced to Appellant in the men=s restroom and arrangements were made
for the detective to purchase cocaine from Appellant.  During the meeting, Appellant told the
detective he would sell him an ounce of cocaine for $600.[1]  After a brief discussion, Detective Garcia
paid Appellant for the drugs.  Appellant
then left to retrieve the cocaine while Detective Garcia and Mr. Hernandez
waited at the bar.  A short while later,
Felix Santistevan entered the bar and motioned for
the detective.  Detective Garcia followed
Mr. Santistevan out of the bar and into the parking
lot.  Detective Garcia later testified he
did not know Mr. Santistevan, but assumed had been
sent by Appellant to give him the cocaine or deliver a message.  The two men introduced themselves and then
Mr. Santistevan opened the hood of a car, retrieved a
baggy of cocaine from the battery area, and gave it to Detective Garcia.  The detective then asked Mr. Santistevan if Appellant had sent him and Mr. Santistevan answered in the affirmative.  Both Appellant and Mr. Santistevan
were later arrested for unlawful delivery of cocaine.  

ISSUES
ON APPEAL








Appellant now
raises three issues on appeal.  First, he
argues the court erred in not granting his Amotion
for judgment of acquittal.@  In essence, Appellant is challenging the
legal sufficiency of the evidence establishing the existence or amount of
adulterants and/or dilutants in the controlled
substance.  Second, he contends the trial
court erred in the admission of hearsay evidence.  Third, he asserts the trial court erred by
failing to order the State to produce the confidential informant at trial,
provide the defense with the informant=s
whereabouts, and render assistance in locating him.

With his first
issue, Appellant complains the State failed to prove the amount and nature of
the adulterants and dilutants present in the
controlled substance.  Appellant relies
on two 

sub-issues
to support his contention that this proof was required.  First, he maintains the wording of indictment
and Texas case law require such proof.  Second, he contends the State must prove the
amount of adulterants or dilutants in the cocaine in
order to satisfy the requirements of Apprendi
v. New Jersey.[2]








The indictment
described the controlled substance as Acocaine,
having an aggregate weight of 4 grams or more but less than 200 grams,
including any adulterants or dilutants.@ 
Appellant argues when adulterants or dilutants
constitute a part of the weight utilized to increase punishment, the State must
prove:  (1) the identity of the named
illegal substance; (2) the chemical activity of the illegal substance has not
been affected by the adulterants and dilutants; (3)
the adulterants and dilutants were added to the
illegal substance in order to increase the bulk or quantity of the final
product; and (4) the total weight of the illegal substance, including any adulterants
or dilutants. 
Appellant relies on the Court of Criminal Appeals=
decision in Cawthon v. State[3]
to support this argument.  He contends
that because the State failed to meet its burden of proof under Cawthon, the evidence is insufficient to support the
conviction.[4]  

Legal
Sufficiency

In reviewing the
legal sufficiency of the evidence supporting a criminal conviction, an
appellate court views the evidence in the light most favorable to the verdict
to determine whether any rational fact finder could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61
L.Ed.2d 560, 573 (1979); Geesa v. State, 820
S.W.2d 154, 159 (Tex.Crim.App. 1991), overruled on
other grounds, Paulson v. State, 28 S.W.3d 570 (Tex.Crim.App.
2000).  We do not reconcile
conflicts of fact or assign credibility to witnesses, as this is within the
exclusive province of the jury.  Adelman
v. State, 828 S.W.2d 418, 421 (Tex.Crim.App.
1992); Lucero v. State, 915 S.W.2d 612, 614 (Tex.App.--El
Paso 1996, pet. ref=d).  Instead, the sole duty of this Court is to
determine if the explicit and implicit findings of the jury are rational when
the evidence admitted at trial is viewed in a light most favorable to the
verdict.  Adelman, 828 S.W.2d at
421-22; Lyon v. State, 885 S.W.2d 506, 517 (Tex.App.--El Paso
1994, pet. ref=d).








Appellant=s argument relies on Cawthon and its progeny.  However, Appellant fails to acknowledge Cawthon no longer applies in cases such as the one
before us today.  Cawthon
was decided in 1992.  Since that time,
the legislature has specifically amended the Texas Health and Safety Code
provisions addressing situations where adulterants or dilutants
are present in a controlled substance.[5]  These amendments omit the Cawthon
requirements.  Because these statutory
amendments supersede earlier case law, we look solely to the Texas Health and
Safety Code to resolve this issue.  See
Hernandez v. State, 13 S.W.3d 492, 498-99 (Tex.App.--Amarillo
2000), rev=d
on other grounds, 60 S.W.3d 106 (Tex.Crim.App.
2001).

Texas
Health & Safety Code Provisions








Criminal
prosecutions for intentional or knowing delivery of a controlled substance such
as cocaine are governed by the Texas Health and Safety Code.  See Tex.Health & Safety Code Ann. '' 481.102, 481.112 (Vernon Supp.
2003).  A person commits an offense if he
intentionally or knowingly delivers a controlled substance listed in the
statute.  Tex.Health & Safety Code Ann.
' 481.112.  Cocaine is included in the statute and
categorized as a Penalty Group 1 substance. 
Tex.Health & Safety Code Ann. ' 481.102(3)(D).  Delivery of cocaine is a first-degree felony
offense if the aggregate weight of the substance, including adulterants or dilutants, is four grams or more, but less than 200 grams.  Tex.Health &
Safety Code Ann. ' 481.112(d).  Adulterants or dilutants
are defined by the statute as Aany
material that increases the bulk or quantity of a controlled substance,
regardless of its effect on the chemical activity of the controlled substance.@ 
Tex.Health & Safety Code Ann. ' 481.002 (49).  The legislature has also clearly defined the
term Acontrolled
substance@ such
that it Aincludes
the aggregate weight of any mixture, solution, or other substance containing a
controlled substance.@  Tex.Health & Safety Code Ann.
' 481.002(5).

In this case, the
State produced evidence that the substance delivered to Detective Garcia
contained cocaine and weighed 24.81 grams. 
William Todsen, a forensic scientist with the
Texas Department of Public Safety, testified he had performed tests on the
substance and concluded it contained cocaine. 
He also explained his tests indicated the presence of adulterants and/or
dilutants in the substance, but he did not determine
the nature or amount of this material. 
Mr. Todsen testified the aggregate weight
of the substance was 24.81 grams.  The
State also introduced the actual cocaine, as well as the written lab report
prepared by Mr. Todsen.  The lab report clearly indicated the
substance contained cocaine and weighed 24.81 grams.  

When viewed in the
light most favorable to the verdict, Mr. Todsen=s testimony and the exhibits admitted
into evidence are sufficient for us to conclude that a rational fact finder
could have found the essential elements of the offense beyond a reasonable
doubt.  Geesa,
820 S.W.2d at 159. 
In particular, the evidence was legally sufficient to allow the jury to
conclude the substance delivered was cocaine, in the amount of at least four
grams but less than 200 grams.  Tex.Health & Safety Code Ann. '' 481.102(3)(D),
481.112(d).  This portion of Appellant=s first issue is overruled.








Appellant also
argues the State had to prove the amount of adulterants or dilutants
in the cocaine in order to fulfill the requisites of Apprendi.  Appellant reasons the addition of adulterants
or dilutants to cocaine results in an increased
penalty for delivery of a controlled substance. 
He argues the amount of adulterants or dilutants
is a penalty-enhancing element that must be proven beyond a reasonable
doubt.  Appellant=s
argument relies upon tying the amount of the adulterant or dilutant
to severity of punishment.

Appellant=s proposed application of Apprendi in this particular case is flawed for several
reasons.  First, as previously discussed,
the amount of adulterants or dilutants present in a
controlled substance is not at issue. 
The code defines controlled substance to include an illegal substance
such as cocaine and any adulterant or dilutant also
present in the mixture.  Tex.Health & Safety Code Ann.
' 481.002(5).  Second, Appellant suggests the amount of
controlled substance is essentially a fact that can be used to enhance a
penalty.  This description is misleading.  The code establishes several offenses related
to the possession of a controlled substance with intent to deliver.  See Tex.Health & Safety Code Ann. ' 481.112.  Each offense is tied to a defined weight or
amount of controlled substance and an attendant punishment range.  Id. 
The amounts of controlled substance and the corresponding punishment
range are graduated.  Id.  However, this gradation does not create an
enhanced penalty scheme, but rather independent chargeable offenses.  Third, Apprendi
requires the State to prove beyond a reasonable doubt any fact that increases
the penalty for a crime beyond the prescribed statutory maximum.  Apprendi,
530 U.S. at 490, 120 S.Ct.
At 2362-63.  It also requires these fact
issues to be submitted to the jury.  Id.  In this instance, the amount of adulterant or
dilutant was not a fact issue that was used by the
court to enhance the penalty beyond the statutory limits.  Further, it was the jury, not the judge that
found Appellant guilty of delivery of a controlled substance.  Apprendi
simply does not apply to the issue before us as suggested by Appellant.  Accordingly, the trial court did not err in
denying Appellant=s motion
for directed verdict.  Appellant=s first issue is overruled.

 








Rule
801(e)(2)(E)

Appellant=s second issue relates to the admission
into evidence of Mr. Santistevan=s statement to Detective Garcia that
Appellant had sent him to deliver the cocaine. 
This statement came into evidence through the testimony of Detective
Garcia.  Appellant maintains the
statement was improper hearsay and should not have been admitted by the
court.  Prior to Detective Garcia=s testimony, the trial court discussed
the matter with the parties outside the presence of the jury.  Appellant argued then, as he does now on
appeal, that the statement constitutes hearsay. 
Appellant primarily directed the court=s
attention to Rule 803(24) and cases involving that rule.[6]  The State has consistently maintained the
testimony was offered and admissible under Rule 801(e)(2)(E).  The trial court ultimately allowed the
testimony under this particular rule.

Texas Rule of
Evidence 801(e)(2)(E) provides:








(e)        Statements Which Are Not Hearsay.  A statement is not hearsay if:

 

.               .               .

 

(2)        Admission by party-apponent.  The
statement is offered against a party and is:

 

.               .               .

 

(E)       a statement by a
co-conspirator of a party during the course and in furtherance of the
conspiracy.

 

Tex.R.Evid. 801(e)(2)(E).  As a general rule of evidence, Rule 801(e)(2)(E) is applicable to cases involving any offense, and is
not limited to prosecutions for conspiracy. 
Roy v. State, 608 S.W.2d 645, 651 (Tex.Crim.App. 1980); Bailey v. State, 804 S.W.2d
226, 230 (Tex.App.--Amarillo 1991, no pet.).  Moreover, when two or more individuals take
part in the commission of a felony, evidence of the conspiracy is admissible
regardless of whether the substantive crime of conspiracy is charged in the
indictment.  Roy, 608 S.W.2d at 651.

Conspiracy








A conspiracy
includes everything within the contemplation of the conspirators.  Wilkerson v. State,
933 S.W.2d 276, 279 (Tex.App.--Houston [1st Dist.]
1996, pet. ref=d); Callaway
v. State, 818 S.W.2d 816, 831 (Tex.App.--Amarillo
1991, pet. ref=d).  It is terminated only after every act
subsequent to the commission of the offense within the plan and breadth of the
conspiracy has been performed.  Callaway,
818 S.W.2d at 831. 
Whether a conspiracy exists between two parties must be proved by a
preponderance of the evidence.  Wilkerson,
933 S.W.2d at 279. 
Such proof may be established by direct or circumstantial facts and also
may be inferred from the evidence.  Id.  Proof that two individuals were acting
together to sell illegal drugs is by itself sufficient to establish a
conspiracy.  Roy, 608 S.W.2d at
651; Wilkerson, 933 S.W.2d at 280; see also Burton v. State, 830
S.W.2d 197, 203 (Tex.App.--El Paso 1992, no pet.). 

In this instance,
there is evidence demonstrating the existence of a conspiracy between Appellant
and Felix Santistevan.  Detective Garcia=s
testimony linked the individuals=
mutual involvement in the sale of the cocaine. 
The conversation between Detective Garcia and Mr. Santistevan occurred during the commission of the offense
and may fairly be considered within the breadth and furtherance of the
conspiracy.  Wilkerson, 933 S.W.2d at 280. 
The trial court=s
reliance on this testimony in finding evidence of a conspiracy and allowing the
statement into evidence was proper.  See
id.  Appellant=s
second issue is overruled.

Confidential
Informant

With his third
issue on appeal, Appellant claims the trial court erred in its rulings
regarding a confidential informant.  In
particular, Appellant argues the court erred by not ordering the State to
provide the whereabouts of a confidential informant and render reasonable
assistance in locating that person.  Appellant
also contends the court erred by not ordering the State to actually produce the
confidential informant at trial.








Prior to the
commencement of trial on September 18, 2000, defense counsel made a motion to
require disclosure of all informers relied upon by the State.  After a brief discussion, the court ordered
the State to give defense counsel the name of the informant.[7]  The court also ordered the State to try to
find the informant and make him available for the defense to question.  After this ruling, defense counsel made a
motion for the court to require the State to actually produce the confidential
informant as a witness.  The defense
reasoned the informant was a material witness that should be required to
testify.  The State indicated it had
never intended to call the informant and it had never listed the informant as a
possible witness.  The prosecutor further
argued the State was only obligated to disclose the name of the informant and
the defense was responsible for securing that individual as a witness if they
so desired.  The prosecutor agreed to try
to locate the individual, but maintained a failure to do so would not be fatal
to the case.  After this exchange, the
court again asked the State to attempt to find the informant, but did not issue
an order requiring the witness to be produced. 


On September 19,
2000, issues related to the confidential informant were again raised by the
defense.  At that time, the trial judge
confirmed the State had revealed the name of the informant to the defense.  The court also inquired as to whether the
State had been able to locate the informant. 
The prosecutor explained that an agent from the District Attorney=s Office had attempted to locate the
informant, but was unsuccessful.  He also
explained the State did not have a current address for the individual.  Again the defense argued the State=s failure to produce the informant as a
material witness would be fatal to the case. 
Defense counsel maintained the State has the burden of calling the
confidential informant as a witness once the identity of the informant has been
revealed.  In response, the State noted
the defense had failed to issue a subpoena or make any attempts to locate the
informant.  The prosecutor argued that
because the State never intended to call the informant, had not listed him as a
witness, and had not issued a subpoena compelling his presence in court, the
Appellant should have made efforts to obtain the witness himself.








In response to
defense counsel=s
argument, Detective Garcia was called to testify outside the presence of the
jury.  The detective testified that a
confidential informant, Jose Escobedo Hernandez, had been present on the day in
question.  The defense argued the
presence of the informant entitled Appellant to question the informant.  The State contended there had been no
requisite showing of materiality.  After
a lengthy discussion, the court denied Appellant=s
motion and did not require the State to produce the informer.

Disclosure of an
informant=s
identity is required if it would be relevant and helpful to the defense or
essential to a fair determination of a cause. 
Roviaro v. United States, 353
U.S. 53, 

60-1, 77 S.Ct. 623, 628, 1 L.Ed.2d 639, 645 (1957); United States
v. Davis, 487 F.2d 1249, 1251 (5th Cir. 1973).  Once the identity of an informer is
disclosed, the State is not automatically required to actually produce a
witness.  United
States v. Fischel, 686 F.2d 1082, 1092 (5th Cir.
1982); Rangel v. State, 585 S.W.2d 695, 697 (Tex.Crim.App.
1979); Fitzpatrick v. State, 632 S.W.2d 935, 938 (Tex.App.--Fort
Worth 1982, pet. ref=d).  However, the State should provide the last
known address of the informer and reasonable assistance in locating him or
her.  Rangel, 585
S.W.2d at 697.  Whether the State
provides reasonable assistance in locating an informer is determined on a
case-by-case examination of the facts.  Id.  








In the case before
us, there is nothing in the record to indicate the State had any special or
concealed knowledge about the informant=s
location at the time of trial.  Ashorn
v. State, 802 S.W.2d 888, 894 (Tex.App.--Fort
Worth 1991, no pet.); Fitzpatrick, 632 S.W.2d at 938.  To the contrary, there is evidence of the
State=s
attempts to cooperate with Appellant. 
The record reveals the State made a good faith effort to locate the
informant at the request of the court.  See
Rangel, 585 S.W.2d at 697 (where the Court found the State gave reasonable
assistance in locating an informer even though it had no information which
could aid in finding the individual). 
Moreover, there is no evidence or suggestion that Appellant made any
efforts whatsoever to locate the informer and call him as a witness.  Ashorn, 802 S.W.2d at 894.  

Upon review of the
record, we conclude the trial court did not err in its rulings related to the
confidential informant.  We further
conclude the State provided reasonable assistance in locating Mr.
Hernandez.  Finally, we hold there is no
absolute requirement of the State to produce an informer as a witness.  Id. 
Appellant=s third
issue on appeal is overruled.  

Overruling each of
Appellant=s issues
on appeal, we affirm the judgment of the trial court.

 

 

 

February
27, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
Detective Garcia testified that the word Acocaine@ was not actually used by either party
during the conversation.





[2]
530 U.S. 466, 120 S.Ct. 2348, 147
L.Ed.2d 435 (2000).





[3]
849 S.W.2d 346 (Tex.Crim.App.
1992). 





[4]
In his brief, Appellant seems to challenge both the legal and factual
sufficiency of the evidence supporting his conviction.  However, his complaint is that the trial
court erred in denying his motion for directed verdict.  He argues that the State Anever introduced any evidence
whatsoever@ related
to the adulterants and dilutants in the controlled
substance.  Appellant requested this
Court reverse and render a judgment of acquittal.  The State contends that Appellant=s no-evidence complaint is essentially
a challenge limited to the legal sufficiency of the evidence.  We agree. 
When an appellant complains on appeal of a trial court=s failure to grant a motion for
directed verdict, such a complaint challenges the legal sufficiency of the
evidence, not the factual sufficiency of the evidence.  Williams v. State,
937 S.W.2d 479, 482 (Tex.Crim.App. 1996); Barron
v. State, 43 S.W.3d 719, 722 (Tex.App.--El Paso
2001, no pet.).





[5]
In 1993, the Legislature amended Section 481.002 to add a specific definition
for the terms Aadulterant
or dilutant.@  Act of May 29, 1993, 73rd Leg., R.S., ch. 900, '
2.01, 1993 Tex.Gen.Laws
3705.  The definition of Acontrolled substance@ was also modified in 1997.  Act of May 23, 1997, 75th Leg., R.S., ch. 745, '
1, 1997 Tex.Gen.Laws
2411.





[6]
Rule 803(24) provides:

 

The following are not
excluded by the hearsay rule, even though the declarant
is available as a witness:

                                                              .               .               .

 

(24)      Statement Against
Interest.  A statement which was at
the time of its making so far contrary to the declarant=s pecuniary or proprietary interest, or
so far tended to subject the declarant to civil or
criminal liability, or to render invalid a claim by the declarant
against another, or to make the declarant an object
of hatred, ridicule, or disgrace, that a reasonable person in the declarant=s
position would not have made the statement unless believing it to be true.  In criminal cases, a statement tending to
expose the declarant to criminal liability is not
admissible unless corroborating circumstances clearly indicate the
trustworthiness of the statement.

 

Tex.R.Evid. 803(24).  Because the testimony was neither offered nor
admitted as a statement against interest, we need not address those aspects of
Appellant=s
argument related solely to this particular rule of evidence.





[7]
The record indicates the State had previously disclosed the identity of the
informant at an earlier hearing to Appellant=s
attorney at the time.  Appellant was
represented by a different attorney at trial who maintained he was unaware of
the informant=s
identity.